## MARY C. PRESTON

### *v.*

## LEWIS B. CASNER *et al.*

*Filed at Springfield September 28, 1882.*

1. STATUTE OF FRAUDS—*verbal contract to convey land.* A verbal agreement by a person to convey lands to another, in consideration that the latter would remain with her family on the place of the former, and make a home there for the owner so long as he should live, is within the Statute of Frauds, and equity will not enforce the same when there has been no performance that will take the contract out of the statute.

2. TRUST—*not created by request of owner to his heirs to convey land.* The owner of lands wrote a letter to his brother, who was a prospective heir of such owner, requesting him and his sister, on the owner's death, to let a certain person have certain of his land for her kindness to him in sickness, and desiring them to see that his wishes as to the bounty be carried out, and subsequently wrote another letter to another person, showing more clearly that the former letter was a mere request, stating in the last letter further: "I give her my note for $4000, against me or my estate.　*　*　*　If my people refuse to give her the property, then they must pay the note:" *Held,* that this created no trust in respect to the land in favor of the person to whom the owner wished it secured, and being a mere request as to what disposition should be made of a part of his property, it was obligatory on no one to perform it.

APPEAL from the Circuit Court of Piatt county; the Hon. C. B. SMITH, Judge, presiding.

Mr. J. E. CONE, and Mr. S. F. WHITE, for the appellant:

A trust was created by C. Casner in favor of appellant, by which she has an equitable estate, and is entitled to a conveyance of the legal title. 4 Kent's Com. 304, 305; Story's Eq. Jur. secs. 972, 973; Hill on Trustees, (4th Am. ed.) 95, 96, 101, 144; *Kingsbury* v. *Burnside et al.* 58 Ill. 310; 1 Greenleaf on Evidence, sec. 257.

Extrinsic evidence is admissible to locate the land. 2 Phillips on Evidence, 276, 277, and note 3; 1 Greenleaf on Evidence, sec. 286; *Colcord* v. *Alexander*, 67 Ill. 581; *Clark* v.

*Powers,* 45 id. 283; *Marshall* v. *Gridley,* 46 id. 247; *Bybee* v. *Hageman,* 66 id. 519; *Cornwell* v. *Cornwell,* 91 id. 414; *Smith* v. *Crawford,* 81 id. 296; *Chicago Dock and Canal Co.* v. *Kinzie,* 93 id. 415.

The trust is an executed one, and requires no consideration to uphold it. Hill on Trustees, (4th Am. ed.) 142; *Nicol* v. *Ogden,* 29 Ill. 323.

An election was contemplated, and the right to locate the two hundred acres given to appellant, which she has exercised by her claim and occupancy, and by the bill, and the trust became thereby fixed on the land described. 2 Phillips on Evidence, 313; Cowen & Hill's notes to same, 270, 527, vol. 4; 1 Best on Evidence, (Morgan's ed.) 426; Dane's Abr. 363; 1 Sugden on Vendors, (Am. ed. from 9th London ed.) 189; *Choat* v. *Burnham,* 7 Pick. 274; *Allen* v. *Kingsbury,* 16 id. 239; *Hanen* v. *Brown,* 7 Greenlf. 421; *Howle* v. *Biglow,* 10 Mass. 379.

If the court can not locate the land, the subject of trust, and if the case does not fall within the doctrine of election, then the trust is not to fail. But appellant becomes tenant in common with the heirs of C. Casner, and is to take five-eights of the east half of the section, or one-half of the four hundred acres in said section, and may have relief under her general prayer. Freeman on Co-tenancy, sec. 96, and cases there cited; *Smith* v. *Crawford,* 81 Ill. 296; *Gill* v. *G. T. M. M. and T. Co. et al.* 92 id. 249; *Isaacs* v. *Steel,* 3 Gilm. 97.

Messrs. NELSON & HUNDLEY, and Messrs. LODGE & HOUSTON, for the appellees:

The papers relied on are neither a contract to convey land, a conveyance by deed, nor a devise, and as a matter of law do not create a trust. At most, they only show a desire of Casner as to how the land should be disposed of, and not a disposition of it. 4 Kent's Com. (4th ed.) 304.

These papers create neither an executed nor executory trust, as either is defined by law writers. 4 Kent's Com. 305; Perry on Trusts, secs. 359, 77, 100, 102.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

The original bill in this case was for specific performance, and was brought by Mary C. Preston, against Lewis B. Casner, Jemima Bear, and Eleanor Deck, and with whom is impleaded James Preston. It is alleged in the original bill that Christopher Casner, since deceased, was the owner of large tracts of land, and among others the home place, consisting of a large body of land, with dwellings and improvements situated thereon; that in April, 1876, he let complainant into possession of the dwelling house and adjacent land, upon consideration he should have a home with complainant, and that her husband should have land to till there; that in March, 1880, it was agreed, if complainant would agree to remain with her family on the place, and make a home there for him so long as he should live, that he (Casner) would make her a deed in her own right, conveying to her the house and two hundred acres of land, particularly described, within nine months from the first day of March, 1880, and that complainant did remain on the place, and made a home for him until his death, which occurred November 3, 1880. It is further alleged, Christopher Casner died intestate, leaving no widow or any child, or descendants of any child, and his only heirs him surviving being a brother, Lewis B. Casner, a sister, Jemima Bear, and a niece, Eleanor Deck, all of whom are made defendants to the bill. The prayer of the bill is, that the heirs of the intestate be decreed to convey the land in controversy to complainant, and for other relief concerning the matters alleged in the bill. To this bill the heirs filed their answer, in which they admitted the ownership of the lands in Christopher Casner at the time

of his death, but denied the contract and agreement, as alleged in the bill, and pleaded the Statute of Frauds, averring, also, that complainant's possession and occupancy of the premises was as wife of defendant Preston, who was a tenant of the intestate, and not otherwise. Afterwards, on leave given by the court, complainant amended her bill, by insisting upon an equitable estate in the same lands, on the ground of a trust it is alleged was created in her favor by Christopher Casner, by his letter of the 11th of October, 1880, addressed to his brother, Lewis, and the paper of the 18th day of the same month, delivered to complainant herself, and by her retained. Both of these papers will be more particularly remarked upon further on, in speaking of their contents and legal effect. To the amended bill the heirs also answered, denying all the material allegations, and setting up the 4th section of the Statute of "Frauds and Perjuries," which is to the effect all declarations or creations of trusts in lands must be manifested by some writing signed by the party who is able by law to declare such trust, or by his last will in writing, or else they shall be utterly void, and of no effect. On the hearing, on proofs taken before the master in chancery, and in open court, the circuit court dismissed complainant's bill, and now she brings the case to this court on appeal.

As respects the contract set forth in the original bill, that the intestate would, within nine months from a date mentioned, convey the lands to complainant on account of the consideration stated, by deed, it is obvious the Statute of Frauds, which is pleaded by the heirs, is a complete bar to any relief. It is not alleged the agreement or contract was in writing, and of course equity will not enforce a mere parol contract for the conveyance of lands, where there has been no performance that would take it out of the operation of the statute, against a party or his heirs who insist upon their

privilege to avoid it under the statute, because such contract is not in writing, and signed by the party to be charged.

It remains to be considered whether the intestate created any trust in the lands involved, in favor of complainant, that is valid within the meaning of the 4th section of the Statute of Frauds. It seems plain no trust was created or manifested in her favor by either paper given in evidence. Treating both papers as having been signed by the intestate, it will be necessary to ascertain their legal effect. In the letter of the 11th of October, 1880, addressed to his brother, Lewis, he says he wants his brother to see that complainant gets a home where she resides, and that he wants her to have two hundred acres, and he gives it to her where the house is. It was his special wish that his brother should see that she got it, and he then adds: "I mean to give her a home here, and deed it to her in her own name, as her own property. This is done of my own free will, for her kindness to me." After expressing his great obligations to complainant for her kindness during his illness, he then adds in a postscript: "Tell Jemima the same, and see that my wishes are carried out before anything else is divided. If I don't have a will, do just as I tell you, for this is my wish and will to be carried out by you, for she deserves this, and more, from me. * * * Jemima and you do just as I say." In the paper of the 18th of the same month, he says: "In case I should not get well to make arrangements for Mrs. Preston, and that I don't speak to my brother, Lewis, concerning my request in my letter to him, I give her this letter to hold. * * * I also give her her choice of taking the property or money, she wished the property in place of the money. * * * I give her my note for $4000, against me or my estate. * * * She is to be provided for first, before any of the land is divided. * * * If my people refuse to give her the property, then they must pay the money."

Construing these papers together, as must be done, it is clear no trust is created by them in these lands in favor of complainant. They constitute neither a will in writing, nor yet such a writing as manifests a trust in the lands that could be executed by any one after the death of the intestate. The title to the lands remained in the intestate, and of course at his death descended to his heirs at law. It was simply a request to his brother, Lewis, and his sister, Jemima, to see that his wishes concerning his bounty to complainant should be carried out, and it is nothing more. The request made of his brother and sister could only be performed so far as they were individually concerned. Another heir was interested in the lands, and of course they could make no deed that would pass the whole title to complainant, as it seems decedent wished it should be done. The second paper makes it clear beyond all controversy, that what he said in his former letter to his brother, Lewis, was a mere request to him and his sister to carry out his benevolent wishes toward complainant, who seems to have rendered him kindly attentions, for which he was most grateful, and was so understood by himself, for in this last paper he says: "I give her my note for $4000, against me or my estate. * * * If my people refuse to give her the property, then they must pay the note." Being a mere request as to what disposition should be made of a part of his property, it manifested no trust that was obligatory upon any one to perform. Indeed, it was impossible of full performance by those upon whom the request was laid.

The decree of the circuit court dismissing complainant's bill was proper, and must be affirmed.

*Decree affirmed.*